Good morning, sir. Good morning. Thank you. May it please the Court. I'm Jeffrey Ehrlich for the appellant, Scott Minkler. The precept that I think is of particular importance in deciding the insurance interpretation case the Court faces today is that when the Court is faced with two competing suggestions for how the policy should be interpreted, if the Court finds that both are reasonable, it stops. The Court does not try to weigh which is more reasonable. Just hold on a second. Okay. For my sins, I used to do a great deal of coverage, adjudication in the state court. You first start under California law. Do we agree we're under California law? Absolutely. You first start under 1635 of the Civil Code, pursuant to Bank of the West, with a plain meaning. Yes. Only if the plain meaning cannot be adduced, because it's ambiguous, do you go to 1649, which is the reasonable expectation of the promisee. Only if ambiguity still retains, then do you go to 1654, which is contra pro forensic. Right? I agree completely. Now, why don't we do something really efficient and certify this case to the California Supreme Court? I suggest that the Court should do so. And that would be ---- That's not what you're asking us to do, is it? It is, yes. You're asking us to certify? You don't want us to decide the merits? I mean, that's what bothers me. I can understand if you said that this is a difficult question under California law and the Court should certify. But as I recollect, your prayer for relief first asked that it be reversed and then goes on, doesn't it, to say that the Court may wish to send it to the California Supreme Court? Well, Judge Friedman, the California rule for certification and the Ninth Circuit's rules are somewhat confusing. It's not clear to me when you make the request. The appellate treatises I consulted say that there's no time. It wasn't clear whether the appropriate thing to do was to first make a motion. The treatises we consulted said you can include a request in your brief and essentially leave it to the Court. It's an unusual process. The California Supreme Court is not very ---- doesn't grant a relief rate very frequently and it slows things down. And so this Court doesn't very often certify things. And so I don't want to suggest that ---- I didn't feel that I was in a position to sort of say either you do one or the other. I think that our position is, as the appellant, this is a court case before this court and I assume you're going to decide it. But one of the options you do have if you think that the issue sufficiently warrants this process, since it is a question where you have to predict what that court would do, is to certify it. And I think it should be certified. I have other matters presenting the same question. I'd like it resolved by the California Supreme Court. But I'm happy to do my best to argue it. Case A, you'd like to win. Case B, you'd like to have a solution. That is absolutely true, Judge. As long as I walk away with the reversal at the end of the day, I'm happy. Now, tell us why ---- what's your theory as to why the severability clause has any effect on the exclusion in this case? Well, my analysis would parallel what the concurrence from Justice Baxter, which is that if you have a lay insured reading an insurance policy and you have a sentence that says, you know, this insurance applies separately to each insured, then you have an exclusion that ----  I know. If it says it has access to policy limits, it means insured A has policy limits and insured B has policy limits. I have to disagree with you, Judge Bayer, that that's how a lay insured ---- I didn't say that that was my conclusion. Okay. I would say that was an argument. That is an argument. But I don't think that a lay insured would particularly understand that when you read an insurance policy, you separate it at the declarations, the coverage clause, the exclusions and the conditions, and understand necessarily that, you know, that the coverage clause gives a broad grant of coverage and then the exclusions chip away. I think that you ---- the lay insured would look at that sentence and try to figure out what it means. And on its face, it's pretty clear. This insurance applies separately to each insured, as if I'm the only insured. Then you have to juxtapose that against an exclusion that says that if there are more than one insured, the active and insured somehow vitiates coverage as to all insurers. Well, that doesn't sound ---- Let me put a question to you which troubles me. Suppose, hypothetically, that these assaults had been committed not by the son but by the mother, who was the policyholder. Yes. It's clear, isn't it, that the insurance company would not be liable for the mother's assault. That is true. Why should the insurance company be subjected to greater liability because the assaults were committed by the son rather than by the mother? It seems sort of topsy-turvy. One would think if the mother was excluded, similarly, the son should be excluded. Well, I guess it goes to the theory of liability, that the mother didn't commit the assaults. The mother was ---- I know that, but why should the insurance company be subjected to greater liability because the assault was committed not by the mother but by the son? That's what I don't understand. And that leads me to think that maybe the purpose of the clause is just to make sure that all people who are covered get the same coverage, but that that does not affect the question of what the coverage is. And the coverage, they say, there's an exception here for intentional conduct. For intentional conduct by uninsured and the ambiguity. Well, obviously, it has to be by uninsured because if it was the tax collector who was doing it, there wouldn't be any coverage. But, I mean, I take it you seem to be making too much of a distinction between whether it said uninsured, any insured, or the insured. It seems to me, looking at the clause, its basic purpose, to me at least, is to make sure that everybody who is covered by the policy gets the same benefits. The California cases and the cases around the country make a great deal of the article of whether it's uninsured, the insured, or uninsured. And in a way they may well, but I don't find that distinction that impressive. I may be wrong. No, I think we haven't even gotten to the merits of the coverage argument so much as or philosophically, if you are negligent in failing to prevent someone else's act, that act might not be insured, but your negligence is insured. If she was negligent, she did not know, she did not participate, but she is somehow legally culpable. The promise that the insurance company made is if you are held to be legally culpable for a non-intentional act, you can be held liable, and if you're held liable, we will pay. That's just how the insurance policy is written. And the question is here, given these competing statements of whether it's separate insurance to each insured, and does that mean that you treat me as if I'm the only insured, or whether there is somehow a collective exclusion. If the man who abused Mr. Minkler didn't live with her son, but didn't live with her, and therefore he wasn't under the resident relative and wasn't insured by the policy, there would be no question here that if she was somehow negligent, she could be held liable for his intentional acts. The only reason that there's an exclusion is he's living in her home, and therefore he becomes an insured under the policy. So, ultimately, courts have come down on both sides. It's like one of those optical illusion drawings where you either see the middle of it and it's a goblet or the left and right side where it's two faces. And the question before this court really isn't where it would come down, I think. I think the question is to recognize that there are competing views, and if they're reasonable, it's ambiguous. And I have great difficulty in saying that where the Supreme Court of Massachusetts, the Supreme Judicial Court of Massachusetts, the Minnesota Supreme Court, the Tenth Circuit deciding Utah law, and the Fifth Circuit deciding Texas law, all think it's ambiguous. This court could say, I'm not persuaded, I don't think that's right, but I don't think the court could say, I think that's utterly unreasonable. There are other cases that say exactly that. I understand. It's an interesting question. My question to you, Mr. Ehrlich, is this. Justice Baxter's concurrence was not a majority opinion. No. It was not agreed to by the majority of the California Supreme Court. What was the reason that they didn't agree with Justice Baxter? That one I have a good answer for. And it actually illustrates, in my view, why the fact that this is a concurrence by Justice Baxter is particularly important. And if I'm going to go in that order, I think it's fair to say that Justice Baxter occupies a position ideologically on that court where he would be the one most likely to take the court to task for being overly solicitous to the rights of policyholders. And it would be highly unlikely, in fact, it would likely never happen, that the court would say that he'd gotten ahead of them and that he was being overly protective of the rights of policyholders and the court was trying to bring him in. And the Safeco v. Robert S. decision illustrates this perfectly. The issue there is a young man shoots and fatally kills his friend. And the Safeco policy has an exclusion in it for illegal acts. And the man who does the shooting, the young man, is a juvenile. He pleads guilty to a felony, which seems to be an illegal act, and Safeco denies coverage. And the California Supreme Court majority says, well, illegal acts in California are not the same thing as criminal acts because in California negligence is determined by our civil code. And in theory, negligence is an illegal act but not necessarily a criminal act. And if Safeco had wanted to have a criminal acts exclusion, that's what it should have said. And so the majority finds coverage both for the young man and his parents. Because illegal act is a – Is not criminal act. Is a ambiguous term. Exactly. That would cover both matters that are criminal and not criminal. And it being ambiguous, then you go to the next interpretive canon. Yes. In civil code being the promisee's expectations and the promisee's expectation was of coverage. Yes. Now, two justices dissent and concur. Justice Baxter and Justice Brown. Justice Baxter says I can't accept that an illegal acts exclusion would not bar coverage for the man who did the shooting and pled guilty. So I won't go that far. There's no coverage. I dissent. But with respect to the parents, based on the severability clause, he finds there should be coverage because the severability clause makes the contract illegal. So my point would be that when you have Justice Baxter's vote on this kind of issue, I would suggest that you're likely to get the other votes as well. But on the severability clause, if there's an exclusion for illegal acts which are not criminal, that is the negligent supervision of the young man who got the gun and shot the child, why shouldn't that exclusion also apply to the parents as far as their alleged breach of conduct? In the context of Robert S., the illegal act that Safeco was denying coverage was the act of the shooting. And then Justice Baxter said. Oh, it's not the illegal act of being negligent. That's correct. The lack of supervision. That's correct. Which is what is in the issue here. Yes. Okay. I got you. And the only other. We've taken you past your time. All right. Thank you. Great holiday, Your Honors. Good morning for Safeco Insurance Company. I have a hard time believing that this is getting ambiguous. What is ambiguous? The severability clause or the exclusion? The exclusion is unambiguous, and I'll start with that. It's clear that we're dealing with a blanket exclusion, an uninsured or any insured intentional acts exclusion, which precludes coverage totally under the policy, regardless of who's claiming coverage under the policy. The question is no, no, not so quick, not so fast. It excludes coverage for the son because he committed an intentional act. Right. But if the alleged breach of duty is as to the mother for her failure to properly and using ordinary care supervise the acts of her son, and there's some allegations that the son was abusing the children in the house in which the mother lived and had control over. Right. That is a separate tort theory for liability as to the mother from the son. She's not vicariously liable because of the son's act. She didn't authorize it, et cetera. That's not the theory. The theory is one of negligence. Now, as to negligence, she is not excluded from coverage. Right? By her act. The only argument you have is she's excluded because of the act of an insured. That's correct. Not any insured, but an insured. Well, the courts have interpreted an insured as the same as any insured. That's true in California. I think we'll all agree with that. Right. And it's undisputed that this is a blanket exclusion, and then that, the only issue then is does the presence of the severability clause make any difference, because she doesn't have coverage by virtue of the fact that an insured committed the intentional  Let me ask you about the effect of Northland. Yes. The concurring dissenting opinion of Justice Baxter is not controlling. Right. And so our directions are then we look at the intermediate State appellate court, the leading decision. Northland seems to indicate that the severability clause is limited to giving each insured coverage, not to expanding the coverage. But it is limited to its facts. So how far does Northland go in controlling how we have to decide here? Well, I think Northland is the case that's on points, the only case that directly addresses the applicability or the effect of the severability clause on a coverage exclusion. And if you look at Northland, it followed the Bank of West test for interpreting the policies. It cites the Bank of West several times in the opinion and specifically says that it is giving the words, the meaning, an ordinary lay person would generally assign to them when it views the severability clause and the exclusion. And that's at page 1691 of the opinion. It goes on to say, it cites, I guess, the court in Norgard, but then saying that a clause excluding liability for specific conduct should prevail over a more general severability provision. But then it goes on to say, we reach the same conclusion, at least in the context of this case. So does that narrow Northland to the point where it's not, it doesn't really direct how we need to decide this case? I don't think so. Clearly, Northland court did talk about the community property interest was at issue. But there was also the recognition that the wife was being sued in the separate theory of negligence for failing to supervise the husband. And we were dealing with an uninsured clause, which would be a blanket exclusion. So in that sense, no. But the basis of the wife's liability was, she wasn't, properly to state the case, her assets were at risk under community property law for the husband's negligence. There was no charge that she was negligent in failing to supervise her husband. Okay. That's the difference between Northland and the case we have before us. Because in Northland, the person who might be under severability clause covered had not committed any or failed to act in any illegal or unreasonable way. Maybe she shouldn't have married the guy, but that was something else. All right. But, so that's a distinction. And when Northland says we, in the context of this case, the context of these facts, it's not only water skiers and boats in coverage. But don't we also have to say it's the effect of community property laws in extending liability? Here, in our case, the community property law is not involved. That's true. That's true. I accept that. So there's, I mean, in all good faith, don't you think we should certify this to the California Supreme Court? Well, I don't, first of all, Your Honor, I don't think that this is that difficult an issue. I don't think that you, I think you have plenty of precedent. Not only do you have the Northland, you also have the Sithisu case, which is the unpublished. That was unpublished. Now, when I was practicing law and when I was on a superior court, every time an unpublished case was cited for, by persons other than the parties for purposes of issue preclusion or res judicata, we would reach for the mallet and hit the attorney over the head and say you can't cite that case. We've got a rule of practice that you can't cite that case. Why are you citing it? I mean, you couldn't cite it in the California court.  What? In the federal court, you can cite unpublished opinions. As a matter of fact We're supposed to be applying State law, except we don't apply the State law that says you can't cite unpublished decisions. We're also applying, we also apply also unpublished decisions in this court. Well, but it's a different rule. Even if we're not precluded from citing and relying on those cases, as a matter of our own internal policies, I would think we'd be very reluctant to rely on a California case which could not be cited in the California courts. I mean, why should we accept a, why should we rely on a case that the California court wouldn't rely on? We're trying to determine and apply California law. Your Honors, also have the basic policy construction. The first issue, as you pointed out, is whether it's even ambiguous at all, because we're dealing with a severability clause as a condition. It's not a coverage grant. It has nothing to do with exclusions. Now, explain, explain what the difference is between a condition and a coverage grant for purposes of interpreting the contract. And it, okay, with respect to the severability clause, that it is that all the, every insured gets the same, is entitled to consideration for the same benefits under the policy, so that the rights of one insured are not, is not prejudiced because another insured has a claim against them. That was the historical basis for the severability clause way back when, before I was born, Your Honor. Well, the, tell me why the severability clause got started being used, because I've never quite understood that argument. Okay. It, it, there is, in our brief, I think it's on page, there's a good discussion of it in the Alaska case, which is the 1990 case, in terms of the historical, historical background, just cited in our, in our brief. I looked at that decision, and I didn't see that it was very persuasive. Can you explain that maybe simply as to why, what the words actually mean and actually do and why it was? Prior to 1955, there were courts that were deciding cases involving the insured exclusions. And what you would have would be, you'd have one insured that had an employee and was being sued for the acts of the employee. You'd have another insured that was also being sued. And the courts would find that the insured that hired that employee would have no coverage. And because the insured had no coverage, they wouldn't even consider the status of the other person claiming coverage under the policy. So what the, what the policy drafters did was they inserted this severability clause, or separation of insurance clause, excuse me, it's also referred to, so that when you're, when you are, make it clear that you have the insurance applying to each insured. So the companies were giving the policyholders a break. No, not, I'm sorry, not a break. They were covering more than just one insured. Right. Not a break. It was clarifying that that was never the intent that, that, that one insured be prejudiced simply because another insured didn't have coverage. It didn't. A moment ago you said that the purpose of severability was to make sure that the coverage was extended to all the insureds. Right. Well, the. But that's not what it says. It says this insurance applies separately to each insured. It doesn't say the coverage. It doesn't say the limits. It doesn't say anything that is sort of a part of this insurance policy applies to each insured. It says this insurance, the whole insurance, applies to each insured. Right. What do we do with that? And what we do with that is it simply means that you look at the, the insurance, what it's saying is each insured is to be considered under the policy. You don't have a, don't allow a situation where, because one insured is denied coverage, then it automatically precludes the other insured from not getting coverage. That's simply the purpose of the severability clause. There's no further than that. Yes, sir. I'm sorry. I think that what you're arguing is when the policy says this insurance, that does not in any way control the determination of what the insurance is. And one of the things that the insurance is, is it doesn't cover exceptions to it. And if they had an exception, for example, for conduct when you were drunk, there's no way that this insurance would nevertheless cover that conduct. In other words, when you say we're extending this insurance to everybody, what you're saying is we're extending this insurance, but you have to look to other provisions of the policy to determine precisely what this insurance is. I agree with that. And whether the coverage is there or coverage is excluded. And that's why I put it out first of all by saying it's not a coverage grant at all. Thank you very much. Thank you, Your Honor. I'm taking over your time. Thank you very much. The case of Minkler v. Safeco Insurance is now marked as admitted. And that concludes our calendar for today and for the week. Thank you very much. We're now adjourned.
judges: Bea, Ikuta, Friedman